UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Black Stallion Enterprises,                    CIVIL ACTION

VERSUS                                         NO. 09-4504 c/w 09-6656
                                               Filed in: 09-4504

BAY & OCEAN MARINE, LLC, *in                   SECTION "C" (2)
personam*, and M/V AMERICAN
LADY, her engines, tackle,
appurtenances, etc., *in rem*

**ORDER AND REASONS**[1]

Before this Court is a Motion to Dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[2] Movants are Block One Marine, Inc. ("Block One") and Bay & Ocean Marine Towing, LLC ("Bay & Ocean," collectively: "Defendants"), having filed this motion in response to a declaratory judgment action by their insurer, OneBeacon Insurance Company ("OneBeacon").[3] After reviewing OneBeacon's complaint, Defendants' motion, the parties' memoranda, and applicable law, the Court finds no plausible claim for relief presented by OneBeacon's complaint. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

---

[1] James Sticker, a third-year law student at the LSU Paul M. Hebert Law Center, assisted in the preparation of this Order and Reasons.

[2] Civ. Act. 09-6656 "C," Rec. Doc. 10.

[3] Civ. Act. 09-6656 "C," Rec. Doc. 1.

1

## I. Background

Black Stallion Enterprises ("Black Stallion") initiated the lead case in this matter on July 27, 2009, under this Court's 28 U.S.C. § 1333 admiralty and maritime jurisdiction.[4] Being the hull insurer for Defendants in the lead case, OneBeacon subsequently filed suit for declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*. against Defendants, seeking this Court's declaration that Black Stallion's alleged damages were not covered by the pertinent maritime insurance contract and that OneBeacon owed no defense and indemnity to Defendants. In this second suit, Defendants submitted an answer together with a counterclaim for defense and indemnity,[5] and thereafter filed the present motion seeking the dismissal of OneBeacon's suit, leaving only Defendants' counterclaim for adjudication. Jurisdiction in this matter vests in admiralty and maritime under 28 U.S.C. § 1333, as well as diversity of citizenship under 28 U.S.C. § 1332.

## II. Further Explanation of Procedural Posture

Made defendants in the lead case are Bay & Ocean and its tug, the M/V AMERICAN LADY ("AMERICAN LADY"). As plaintiff in that case, Black Stallion seeks damages allegedly sustained by its tank barge, the "JOHN BLAKE," while being towed by the AMERICAN LADY pursuant to a towage contract.[6] Specifically, Black Stallion alleges "fault, neglect, recklessness and/or gross negligence" by Bay & Ocean and the AMERICAN LADY, as

---

[4] Civ. Act. 09-4504 "C," Rec. Doc. 1.

[5] Civ. Act. 09-6656 "C," Rec. Doc. 6.

[6] Civ. Act. 09-4504 "C," Rec. Doc. 1, p.3 ¶¶ 9-14.

well as a breach of their tow agreement.[7] In its September 17, 2009, answer, Bay & Ocean asserts the following defenses, among others: that Black Stallion's failure to provide a "seaworthy tow" was the sole or contributing cause of the damage, and that the vessel damage was caused by an "Act of God or unavoidable accident" or was "due to the fault and neglect of third parties for whom [Bay & Ocean] is not legally responsible or liable."[8] Additionally, Bay & Ocean agrees with Black Stallion that, among other things, Bay & Ocean owns and operates the AMERICAN LADY and that Black Stallion purchased the JOHN BLAKE from Block One *before* entering into an agreement with Bay & Ocean for the tow services of the AMERICAN LADY.[9] Bay & Ocean denies that the JOHN BLAKE was in seaworthy condition for the voyage.[10]

On October 2, 2009, OneBeacon filed this consolidated declaratory judgment action against Defendants.[11] In its complaint, OneBeacon admits that it issued an insurance policy to Bay & Ocean and Block One, and that the policy was limited to certain scheduled vessels, including the AMERICAN LADY but *excluding* the JOHN BLAKE.[12] OneBeacon further acknowledges that, by embodying American Institute Tug Form 53R-1 into the policy, the

---

[7] *Id*. at pp. 4-5, ¶¶ 16-18, 20-21, 24.

[8] Civ. Act. 09-4504 "C," Rec. Doc. 4, pp. 1-2.

[9] Civ. Act. 09-4504 "C," Rec. Doc. 4, p. 3, ¶ I, referencing Civ. Act. 09-4504 "C," Rec. Doc. 1, ¶¶ 3, 9-10.

[10] Civ. Act. 09-4504 "C," Rec. Doc. 4, p. 3, ¶ IV, referencing Civ. Act. 09-4504 "C," Rec. Doc. 1, ¶ 11.

[11] Civ. Act. 09-6656 "C," Rec. Doc. 1.

[12] *Id*. at p. 3, ¶¶ 5-6; the insurance policy itself may be found in Civ. Act. 09-4504 "C," Rec. Doc. 1-3 (Exhibit 1).

insurance coverage extends to "collision and towers liability."[13] However, OneBeacon asserts that the policy's express warranty of seaworthiness, along with any warranty implied at law, includes not only the AMERICAN LADY *but also* the JOHN BLAKE.[14] OneBeacon first seeks this Court's declaration that the warranty of seaworthiness extends to include the JOHN BLAKE. Additionally, OneBeacon asks the Court to either set out the factual issues necessary to determine at trial whether Defendants violated the warranty, or to declare that Defendants violated the warranty and, therefore, to recognize that OneBeacon owes no coverage to Defendants for Black Stallion's claims against them.[15] Of course, if the warranty does not extend to the JOHN BLAKE, then the additional claims depending on that extension must fail. Similarly, even if the warranty extends to the JOHN BLAKE, there must be legal support for OneBeacon's contention that a breach of that extended warranty precludes coverage. A collection of factual allegations form the foundation of OneBeacon's argument.

First, OneBeacon claims that Block One requested, at a time when it still owned the JOHN BLAKE, that OneBeacon add the barge to the policy schedule.[16] OneBeacon then alleges that it required, as a precondition for attaching the JOHN BLAKE to the policy, a marine survey of the barge to ensure that it was capable of traversing the Gulf of Mexico and the Carribean

---

[13] Civ. Act. 09-6656 "C," Rec. Doc. 1-3, p. 14, lines 77-111.

[14] Civ. Act. 09-6656 "C," Rec. Doc. 1, ¶ 10, citing American Institute Tug Form 53-R2, also made part of the policy and found at Civ. Act. 09-6656 "C," Rec. Doc. 1-3, p. 21, ¶ 1, which states: "Warranted that at the inception of this Policy the Vessel(s) shall be in a seaworthy condition and, thereafter, during the currency of the Policy, the Assured shall exercise due diligence to keep the Vessel(s) seaworthy..."

[15] Civ. Act. 09-6656 "C," Rec. Doc. 1, ¶ 13.

[16] Civ. Act. 09-6656 "C," Rec. Doc. 1, ¶ 11.

4

Sea.[17] OneBeacon next alleges both that the JOHN BLAKE was in fact not of the sufficient class of vessels and was therefore unseaworthy to make the voyage, and that Bay & Ocean knew of this unseaworthiness.[18] OneBeacon appears to doubt whether the JOHN BLAKE was sold to Black Stallion prior to the voyage,[19] and asserts that, as of entering the towage contract, "Defendants knew of the Plaintiff's requirement that a trip/tow survey would be required."[20] Equipped with this knowledge, OneBeacon alleges, Defendants proceeded with the voyage without obtaining the survey. Finally, OneBeacon claims that Defendants breached their duties under the doctrine of *uberrimae fidei* in that they knew of the JOHN BLAKE's unsweaworthiness, knew of OneBeacon's request for the survey, and sold the barge without assuring its seaworthiness.[21]

In this motion, Defendants assert that the scope of any warranty of seaworthiness, whether expressed in the insurance contract or implied at law, is limited to vessels specifically covered by the relevant policy–that is, Defendants argue that any potential warranty encompasses the AMERICAN LADY but not the JOHN BLAKE.[22] Defendants deny the factual foundation as laid out by OneBeacon, detailed above.[23]

---

[17] *Id.*

[18] *Id.*

[19] In its complaint, Civ. Act. 09-6656 "C," Rec. Doc. 1, ¶ 11, Plaintiff states: "Soon after this [survey] request was made, the Insured allegedly sold the Barge to the ultimate buyer for delivery in Louisiana..."

[20] *Id.*

[21] Civ. Act. 09-6656 "C," Rec. Doc. 1, p. 6, ¶ 12.

[22] Civ. Act. 09-6656 "C," Rec. Doc. 6, p. 1

[23] *Id.* at p. 2, ¶ II, referencing Civ. Act. 09-6656 "C," Rec. Doc. 1, pp. 5-6, ¶ 11.

## III. Law and Analysis

### A. Standard for a Rule 12(c) "Motion to Dismiss"

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings." In ruling on motions brought under Rule 12(c), then, a court must first determine whether the pleadings are closed.

This issue may be resolved by reference to the exclusive list of permissible pleadings found in Rule 7(a).[24] If there is no counterclaim, no crossclaim, no third-party complaint, and no outstanding court order for a reply, the pleadings close upon a defendant's filing of an answer.[25] Similarly, if the only pleadings are a complaint, an answer, and a counterclaim designated as such, the pleadings close upon a plaintiff's filing of a reply to the counterclaim.[26]

Here, Defendants filed an answer and counterclaim to OneBeacon's complaint, and OneBeacon filed a reply to that counterclaim.[27] Therefore, the pleadings are closed within the meaning of Rule 12(c).

---

[24] Fed.R.Civ.P. 7(a) provides:
    (a) Pleadings. Only these pleadings are allowed:
        (1) a complaint;
        (2) an answer to a complaint;
        (3) an answer to a counterclaim designated as a counterclaim;
        (4) an answer to a crossclaim;
        (5) a third-party complaint;
        (6) an answer to a third-party complaint; and
        (7) if the court orders one, a reply to an answer.

[25] *See Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007); *Thomas v. JVM Realty Corp.*, 2008 WL 2511216 (W.D. Mich. 2008); *Aspenlind v. Country Wide Home Loans*, 2007 WL 2225798 (D.C. Cal. 2007).

[26] *See Doe v. United* States, 419 F.3d 1058, 1061-1062 (9th Cir. 2005); *Hartford Life Ins. Co. v. Banks*, 2010 WL 391829 *6-7 (S.D. Cal. 2010); *Bell v. Harley-Davidson Motor Co.*, 2007 WL 935588 (D.C. Cal. 2007); *Colapissa Properties, L.L.C. v. Assurance Co. of America*, 2007 WL 2903245, *2 (E.D. La. 2007).

[27] Civ. Act. 09-6656 "C," Rec. Docs. 6 and 9, respectively.

If the Rule 12(c) motion is brought after the pleadings have closed, a court may then consider the merits of the motion. In doing so, courts apply the same standard as required in considering motions to dismiss brought pursuant to Rule 12(b)(6).[28] The Supreme Court has put it this way: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"[29] However, a court is not compelled to accept as true the allegations of a movant that amount to mere legal conclusions.[30] Indeed, "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements do not suffice."[31] That is, mere conceivability is insufficient–plausibility is necessary.[32]

The plausibility of OneBeacon's claims for declaratory relief is considered, of course, in light of the substance of the applicable law.

**B. Presentation and Consideration of Substantive Law**

**1. The Substance of the Warranty of Seaworthiness Expressed in the Parties' Insurance Contract**

First, OneBeacon seeks this Court's declaration that the warranty of seaworthiness expressed in its contract of insurance with Defendants extends beyond the scheduled vessels, such that Defendants were required to warrant the seaworthiness of the JOHN BLAKE. The

---

[28] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191(5th Cir. 2007) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Whitter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002)).

[29] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).

[30] *Id.* at 1949-1950.

[31] *Id.*

[32] *See Twombly*, 550 U.S. at 570.

plausibility of this claim, therefore, depends on this Court's interpretation of the substance of the relevant provisions of the insurance contract.

Under *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, the regulation of marine insurance is generally left to the states.[33] For that reason, the Fifth Circuit has held that interpretation of marine insurance contracts is with reference to state law, unless there is a specific, controlling federal rule.[34] Therefore, this Court will rely on Louisiana's law on interpretation of contracts. The Fifth Circuit has detailed this law as follows:

> Under Louisiana law, "an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Under the Civil Code, "[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.""The words of a contract must be given their generally prevailing meaning," and "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Moreover, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." Importantly, Louisiana law mandates that an insurance policy "should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[35]

Here, the limitations on the warranty of seaworthiness as expressed in the contract are clear and explicit, evincing the parties' common intent that the warranty extend only to scheduled vessels.[36] The JOHN BLAKE is not a scheduled vessel. Based on the clear substance

---

[33] 348 U.S. 310 (1955).

[34] *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991); *see also New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1198 (5th Cir. 1993) and *Marquette Transp. Co., Inc. v. Zurich American Ins. Co.*, 2006 WL 851399, *7 (E.D. La. 2006).

[35] *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 516-517 (5th Cir. 2005) (internal citations omitted).

[36] The relevant provision may be found at Civ. Act. 09-6656 "C," Rec. Doc. 1-3, p. 21, ¶ 1, which states: "Warranted that at the inception of this Policy the Vessel(s) shall be in a seaworthy condition and, thereafter, during the currency of the Policy, the Assured shall exercise due diligence to keep the Vessel(s) seaworthy..." Further, as

of the contract, therefore, the warranty does not extend to the JOHN BLAKE, and OneBeacon's claim seeking this Court's declaration of an opposite conclusion is therefore implausible. To interpret the contract as extending the warranty of seaworthiness to include the JOHN BLAKE would require an appreciation of the parties' contemplation that OneBeacon has not alleged sufficient facts to support.

Still, OneBeacon's factual allegations do maintain that the parties communicated regarding the scheduling of the JOHN BLAKE, and that there was a meeting of the minds as to the fact that OneBeacon required a marine survey before scheduling the JOHN BLAKE. However, viewing these facts in the light most favorable to OneBeacon, the most that the allegations amount to is an implied contention that the parties had modified their original contract. In accordance with *Wilburn*, the Louisiana Insurance Code provides the substantive law against which the plausibility of this factual contention must be considered. The relevant provision is La. R.S. 22:628, which provides, in pertinent part:

> No agreement *in conflict with,* modifying, or extending the coverage of any contract of insurance shall be valid *unless it is in writing and physically made a part of the policy* or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.

(Emphasis added.) OneBeacon has neither provided nor alleged any written modification to the insurance contract, and indeed the insurance policy attached to OneBeacon's complaint reflects no agreement by the parties that the tower's liability coverage was to be contingent on the obtaining of a marine survey of the tow, the JOHN BLAKE. For this reason, OneBeacon may at best be said to have alleged an oral modification to the contract. Under La. R.S. 22:628, such an

---

detailed above, OneBeacon admits the policy's limitation to scheduled vessels and that the JOHN BLAKE is not a scheduled vessel. Civ. Act. 09-6656 "C," Rec. Doc. 1, p. 3, ¶ 6.

allegation is implausible.[37]

**2. The Substance of the Implied Warranty of Seaworthiness**

OneBeacon also seeks this Court's declaration that Defendants impliedly warranted the seaworthiness of the JOHN BLAKE. Accordingly, the plausibility of this claim is considered not in light of the substance of the contract, but with reference to the substance of the law as articulated in the Fifth Circuit.

The implied warranty of seaworthiness has been articulated by the Fifth Circuit as follows:

> But the American Rule, in a rare departure from a determined course of parallel uniformity...implies for a time policy, as does the English Rule as of the commencement of the voyage for voyage policies...a warranty of seaworthiness as of the very moment of attachment of the insurance. And, unlike the English Rule which limits the warranty to the commencement of the voyage, the American Rule takes it somewhat further to extend, in point of time, a sort of negative, modified warranty. It is not that *the vessel* shall continue absolutely to be kept in a seaworthy condition, or even that she be so at the inception of each voyage, or before departure from each port during the policy term. It is, rather, stated in the negative that the Owner, from bad faith or neglect, will not knowingly permit *the vessel* to break ground in an unseaworthy condition. And, unlike a breach of a warranty of continuing seaworthiness, express or implied, which voids the policy altogether, the consequence of a violation of this 'negative' burden is merely a denial of liability for loss or damage caused proximately by such unseaworthiness.[38]

Accordingly, the implied warranty of seaworthiness pertains to the vessel being insured. For this reason, OneBeacon's claim that the scope of this warranty includes the JOHN BLAKE, a non-scheduled vessel, is implausible. In further support of its opposition to the present motion,

---

[37] *See Rapp v. Geico Indem. Co.*, 925 So.2d 626, 629-630 (La. App. 4 Cir. 2/8/06), *writ denied*, 927 So.2d 326, 2006-0594 (La. 5/5/06) (citing to *Hilliard v. Louisiana Health Service and Indem. Co.*, 411 So.2d 1116, 1120 (La. App. 4 Cir. 2/9/82), *reh'g denied* (4/16/1982)).

[38] *Saskatchewan Government Ins. Office v. Spot Pack, Inc.*, 242 F.2d 385, 388 (5th Cir. 1957) (internal citations omitted, emphasis added); *see Employers Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422 (5th Cir. 1992), *cert. denied*, 510 U.S. 813, 92-1789 (U.S. La. 10/4/1993).

though, OneBeacon asserts,[39] and Defendants recognize as possible,[40] that the Fifth Circuit's *Bordlee* decision may apply.[41] There, the Fifth Circuit stated:

> The express language of the endorsement makes clear that Bordlee's P & I policy was modified to provide additional collision and tower's liability. Bordlee, in effect, purchased extra hull coverage. The fact that this addition of traditional hull policy coverage was in the form of an endorsement to the P & I policy *did not automatically transform that coverage to an enumerated P & I risk.* The endorsement merely added a hull policy dimension to the P & I policy. This excess collision and tower's liability was subject to *the same implied warranty of seaworthiness applicable to all hull policies*.[42]

In other words, adding as an endorsement to a P & I policy what is in effect a hull policy will not relieve the insured of the implied warranty that "is implied in every hull insurance policy unless expressly waived."[43] Nothing in *Bordlee* supports OneBeacon's contention that the implied warranty of seaworthiness extends beyond a policy's scheduled vessels–*Bordlee* speaks not to the scope of the implied warranty, but to the tenacity with which the warranty appends to hull policies. The most an application of *Bordlee* would require, if indeed *Bordlee* is applicable, is that Defendants owed OneBeacon an implied warranty of seaworthiness as to the scheduled vessel, the AMERICAN LADY. Therefore, *Bordlee* is inapposite to the claims OneBeacon has presented.

### 3. Substance and Applicability of the Doctrine of *Uberrimae Fidei* (Utmost Good

---

[39] Civ. Act. 09-4504 "C," Rec. Doc. 12, pp. 2-3.

[40] Civ. Act. 09-4504 "C," Rec. Doc. 10-2, p. 8, n. 2.

[41] *Insurance Company of North America v. John J. Bordlee Contractors, Inc.*, 733 F.2d 1161 (5th Cir. 1984).

[42] *Id.* at 1166 (emphasis added).

[43] *Id.* at 1165, citing to *Saskatchewan Government Insurance Office v. Spot Pack*, 242 F.2d 385 (5th Cir. 1957).

**Faith)**

Whatever the substance of the doctrine of *uberrimae fidei*, it has been displaced by Louisiana state law, namely La. R.S. 22:860 (formerly L.R.S. 22:619).[44] Louisiana law under La. R.S. 22:860 reads, in pertinent part:

> [N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made *with the intent to deceive*.

(Emphasis added.) Since OneBeacon has alleged only that Defendants knew of the requirement that the JOHN BLAKE undergo a marine survey before being included on the policy schedule, OneBeacon has not alleged a plausible claim in light of La. R.S. 22:860. To state a plausible claim, OneBeacon would need to allege both misrepresentation and intent to deceive, both within the context of negotiating the insurance contract. Although OneBeacon may be said to have alleged a re-negotiation, it simply has not alleged any misrepresentation or intent to deceive.

**C. Conclusion**

In so ruling, the Court construes OneBeacon's complaint for declaratory judgment as addressing only to the alleged warranty of seaworthiness owed by the JOHN BLAKE as part of the flotilla, and urging that the doctrine of *uberrimae fidei* applies. In the event that OneBeacon

---

[44] *Chambers v. Joshua Marine, Inc.*, 430 F.Supp.2d 580, 584-585 (E.D. La. 2006) (citing *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 886 (5th Cir. 1991)).

has additional claims, a properly filed Motion to Amend should be filed.  Accordingly,

**IT IS ORDERED** that the Motion to Dismiss[45] pursuant to Rule 12(c) filed by Defendants Bay & Ocean Marine Towing, LLC and Block One Marine, Inc. is **GRANTED**.

New Orleans, Louisiana, this 30th day of March, 2010.

                                      HELEN G. BERRIGAN
                                  UNITED STATES DISTRICT JUDGE

---

[45] Civ. Act. 09-6656 "C," Rec. Doc. 10.